# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Guy Micciche, : 
                   Petitioner : 
  : 
       v. : No. 304 C.D. 2018
  : Submitted: December 21, 2018
Unemployment Compensation : 
Board of Review, : 
               Respondent : 


BEFORE:  HONORABLE ROBERT SIMPSON, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE ELLEN CEISLER, Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED:  March 28, 2019**


Petitioner Guy Micciche (Claimant), *pro se*, petitions for review of an order of the Unemployment Compensation Board of Review (Board), which affirmed a decision of a Referee, holding that Claimant failed to appeal timely from the Scranton UC Service Center's (Service Center) determination denying unemployment compensation benefits.  As a result, Claimant was not entitled to benefits.  We now affirm the Board's decision.

Claimant worked for Euphoria Post (Employer).  (Certified Record (C.R.), Item No. 3.)  Claimant voluntarily left his position and filed a claim for unemployment compensation benefits.  (*Id.*)  The Service Center issued a notice of determination, denying benefits pursuant to Section 402(b) of the Pennsylvania

Unemployment Compensation Law (Law),[1] relating to voluntarily quitting employment without cause of a necessitous and compelling nature. (*Id.*) The Service Center made this determination after Claimant had received unemployment compensation benefits, totaling $822. (*Id.*)

By Notice of Determination (NOD), mailed on August 17, 2009, the Department of Labor and Industry's (Department) Office of UC Benefits informed Claimant that his claim was denied and that he had received unemployment compensation benefits to which he was not entitled. (*Id.*) As a result, Claimant received an overpayment and was required to repay the overpayment. (*Id.*) Pursuant to the NOD, Claimant's last day to appeal timely was September 1, 2009. (*Id.*)

Claimant did not file his petition for appeal until September 22, 2017—eight years after the expiration of the appeal period. (C.R., Item No. 4.) The Referee conducted a hearing on October 20, 2017. (C.R., Item No. 8, at 1.) Employer did not appear for the hearing. (*Id.*) Claimant appeared *pro se* and testified on his own behalf. (*Id.*) The Referee noted that the hearing involved but one issue: whether Claimant had filed a timely and valid appeal from the initial Service Center determination. (*Id.* at 3-4.) Claimant testified that "on the record, it . . . is definitely untimely." (*Id.* at 4.) He explained, however, that upon discovering that an issue existed, he immediately took efforts to determine exactly what the issue was. (*Id.*) Claimant testified that in July and August of 2009, he was residing at his parents' home. (*Id.* at 5-6.) Claimant stated that he resided with his parents until

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b).

2

around 2011,[2] but he was unsure of exactly when he moved again. (*Id.* at 6.) Claimant further testified that he did not remember contacting the Service Center on April 23, 2010, but he admitted that, "I'm sure that's—that I did." (*Id.*)

The Referee issued a decision and order, dismissing Claimant's appeal in accordance with Section 501(e) of the Law.[3] (C.R., Item No. 9.) The Referee concluded there was nothing in the record demonstrating that Claimant was misinformed or in any way misled regarding his right to appeal. (*Id.*) Accordingly, the Referee dismissed Claimant's petition for appeal. (*Id.*)

Claimant appealed the Referee's decision to the Board. (C.R., Item No. 10.) By decision and order, dated January 31, 2018, the Board affirmed the Referee's order, concluding that Claimant's appeal was untimely. (C.R., Item No. 11.) In so doing, the Board made its own findings of fact:

1. On August 17, 2009, the Department . . . mailed to the claimant's correct address two determinations: (1) denying unemployment compensation benefits to him and (2) establishing [an] $822.00 fault overpayment.

2. The determination notified the claimant that September 1, 2009, was the final day to file a valid appeal to a referee.

3. On August 26, 2009, the claimant spoke about the determinations with a Department representative, who re-emailed them to him.

4. On April 23, 2010, the claimant discussed the overpayment with a Department representative and was advised to file a late appeal.

---

[2] Claimant explained he moved every year and resided at "1948 Broadway Avenue" from 2013 to 2014, "Oakdale" in 2015, "1947 Westmont" in 2016, and "801" since 2017. (C.R., Item No. 8, at 7.)

[3] 43 P.S. § 821(e).

5. In 2011, the claimant moved, but his parents continued to reside at that address.

6. On June 21, 2016, a lien was filed against the claimant due to his overpayment.

7. On July 16, 2017, the Department mailed an amnesty notice to the claimant.

8. On August 29, 2017, the Department mailed a second amnesty notice to the claimant.

9. In September 2017, the claimant discovered the lien on his credit report.

10. On September 22, 2017, the claimant discussed the overpayment with a Department representative and was advised to file a late appeal.

11. The claimant's appeal was filed on September 22, 2017.

(*Id.*) Based on those findings, the Board reasoned, citing Section 501(e) of the Law, that "unless an interested party files an appeal from the Department's determination within fifteen days after the date of the determination, the Department's determination is final." (*Id.*) The Board found that the final day for Claimant to file an appeal from the Department's determination was September 1, 2009, and Claimant filed an appeal on September 22, 2017. The Board, therefore, concluded that Claimant's appeal was untimely. (*Id.*)

On appeal,[4] Claimant argues that substantial evidence does not exist to support the Board's finding that he neglected to appeal the Board's determination. We interpret Claimant's arguments to be challenges to findings of fact numbers 1 and 4. Claimant further argues that, due to his non-negligent conduct, the Board erred in concluding that the appeal should be considered untimely.

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

4

We first address Claimant's argument relating to substantial evidence. In unemployment compensation cases, the Board is the ultimate finder of fact. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1385 (Pa. 1985). The Board's findings of fact are conclusive on appeal so long as there is substantial evidence to support these findings in the record, taken as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). Substantial evidence is relevant evidence that a reasonable mind might consider adequate to support a conclusion. *Hercules, Inc. v. Unemployment Comp. Bd. of Review*, 604 A.2d 1159, 1163 (Pa. Cmwlth. 1992). When determining whether substantial evidence to support the Board's findings existed, we must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999). This determination can only be made upon examination of the record as a whole. *Taylor*, 378 A.2d at 831. Even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986). Any of the Board's findings of fact that are not specifically challenged on appeal are conclusive upon review. *Salamak v. Unemployment Comp. Bd. of Review*, 497 A.2d 951, 954 (Pa. Cmwlth. 1985).

Finding of fact number 1 provides: "On August 17, 2009, the Service Center mailed to the claimant's correct address two determinations: (1) denying unemployment compensation benefits to him and (2) establishing an $822.00 fault overpayment." (C.R., Item No. 11.) Claimant challenges whether the determinations were mailed to the "correct address," not whether the Service Center

5

actually mailed the determinations. (C.R., Item No. 11.) The Service Center mailed the determinations to Claimant at an address in Milan, Pennsylvania. During the hearing, the Referee specifically questioned Claimant about his address in July or August 2009. Claimant testified that, at that time, he was living with his parents in Milan, Pennsylvania. Claimant confirmed that the Department addressed the determinations (one of which is the NOD at issue in this matter) to the same address at which he was living in July and August 2009. On appeal, Claimant states that in August 2009, he was not living with his parents in Milan, Pennsylvania. Instead, he was living with his aunt in California. There is nothing in the record to support this assertion, despite the Referee specifically questioning Claimant about his residence in August 2009. To the contrary, Claimant's own testimony supports finding of fact number 1. Thus, we conclude that substantial evidence exists to support that finding.

Finding of fact number 4 provides: "On April 23, 2010, the claimant discussed the overpayment with a Department representative and was advised to file a late appeal." (C.R., Item No. 11.) Claimant asserts that this finding is in error because he never spoke with a Department representative. Instead, he suggested that it may have been his father or brother who spoke with the Department representative. The claim record entry from this phone conversation indicates that Claimant was very upset and disputing the overpayment, and the Department representative advised Claimant of the option to file a late appeal and request a possible hardship and informed Claimant that if the Service Center could work an adjustment, it would contact him. (C.R., Item No. 1 at 6.) The entry also indicates that Claimant calmed down and apologized. (*Id.*) The Referee also questioned Claimant about the phone call. Claimant testified:

> I don't recall, however the lady that I spoke to recently on the phone, she had informed me that I did call in, you

6

know, and I'm sure that I did.  It wouldn't be on there if I didn't write, didn't talk. . . .  But I don't remember, but I-I'm sure that's—that I did.

(C.R., Item No. 8, at 6.)  Claimant admitted that he probably did speak with the Department representative.  Claimant's assertion that father or brother spoke to the Department representative is not supported by the record.  Thus, we conclude that substantial evidence exists to support finding of fact number 4.

We next address Claimant's argument that the Board erred in concluding that his appeal was untimely, in light of his non-negligent conduct. Section 501 of the Law provides that a party has fifteen days to appeal a referee decision to the Board.  "If an appeal is not filed within fifteen days . . . , it becomes final, and the Board does not have the requisite jurisdiction to consider the matter." *Hessou v. Unemployment Comp. Bd. of Review*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008).  The Board, however, may consider an untimely appeal under limited circumstances.  *Unemployment Comp. Bd. of Review v. Hart*, 348 A.2d 497, 498 (Pa. Cmwlth. 1975).  The burden to establish the right to have an untimely appeal considered is heavy, because the statutory time limit established for appeals is mandatory.  *Blast Intermediate Unit No. 17 v. Unemployment Comp. Bd. of Review*, 645 A.2d 447, 449 (Pa. Cmwlth. 1994).  Claimant may satisfy this burden in two ways.  First, he can show fraud or a breakdown in the administrative process. *Greene v. Unemployment Comp. Bd. of Review*, 157 A.3d 983, 988 (Pa. Cmwlth.) (citing *Stana v. Unemployment Comp. Bd. of Review*, 791 A.2d 1269, 1271 (Pa. Cmwlth. 2002)), *appeal denied*, 175 A.3d 217 (Pa. 2017).  "Negligence on the part of an administrative official may be deemed the equivalent of fraud." *Stana*, 791 A.2d at 1271.  Second, he can show that non-negligent conduct, beyond his control, caused the delay.  *Hessou*, 942 A.2d at 198.  Failure to file an appeal within

7

fifteen days, in the absence of one of these adequate excuses, mandates dismissal of the appeal. *United States Postal Serv. v. Unemployment Comp. Bd. of Review*, 620 A.2d 572, 573 (Pa. Cmwlth. 1993).

Claimant argues that he should have the right to an untimely appeal based upon the non-negligent conduct standard. Non-negligent conduct means conduct that is beyond the control of the petitioner. *Hessou*, 942 A.2d at 198. An untimely appeal may be allowed where the delay in filing the appeal was caused by extraordinary circumstances involving fraud or some breakdown in the administrative process, or non-negligent circumstances related to the petitioner, his counselor, or a third party. *Cook v. Unemployment Comp. Bd. of Review*, 671 A.2d 1130, 1131 (Pa. 1996). Simply stating that a notice was not received is not a sufficient reason for permitting an untimely appeal. *ATM Corp. of Am. v. Unemployment Comp. Bd. of Review*, 892 A.2d 859, 864 (Pa. Cmwlth. 2006). When notice is mailed to a claimant's last known address, absent the postal authorities returning the notice as undeliverable, the claimant's receipt is presumed and an appeal filed after the expiration of the appeal period is barred. *Mihelic v. Unemployment Comp. Bd. of Review*, 399 A.2d 825, 827 (Pa. Cmwlth. 1979). In an unemployment compensation case, the Board is the ultimate factfinder, including credibility determinations. *Russo v. Unemployment Comp. Bd. of Review*, 13 A.3d 1000, 1003 (Pa. Cmwlth. 2010). While making credibility determinations, the Board is free to reject the testimony of any witness, even if uncontradicted. *Id.*

Here, the Department issued two determinations to Claimant on August 17, 2009, one of which was the NOD at issue in this case. The determinations included notice that the final date to appeal the determinations was

September 1, 2009. Claimant's appeal was filed September 22, 2017, more than eight years after the deadline. Claimant argues that he was "completely unaware of any overpayment or rights to an appeal" and states that he had a "non-neglecting attitude toward handling procedures and court filings and appeals." (Claimant's Br. at 15.) The Department mailed the NOD to Claimant, using the correct address, and the post office did not return the NOD as undeliverable. Claimant's receipt is presumed. As the ultimate factfinder, the Board did not find credible Claimant's assertion that he did not receive the NOD.

Claimant argues that non-negligent conduct caused his appeal to be untimely. He claims he was completely unaware of the overpayment or his rights to an appeal. Claimant provides no explanation for the late filing except that non-negligent conduct caused his appeal to be untimely. We interpret his argument to be that he was not residing at his parents' home when the Service Center mailed the NOD there on August 17, 2009. Claimant makes this argument despite testifying that he resided with his parents in July and August 2009. The record contains nothing to indicate that he was not residing there. Claimant provides a lengthy recitation of his difficulty obtaining identification and a driver's license once he moved to California, but these events commenced in March 2010—seven months after the Service Center mailed the NOD. Claimant also argues that he acted with a non-neglecting attitude toward procedures, court filings, and appeals, but we observe that, if Claimant in fact had moved to California, he did not notify the Service Center regarding a change of address. The Service Center mailed the NOD to the most recent address it had for Claimant. Claimant failed to meet the heavy burden to establish the right to have an untimely appeal considered. As such, we must agree

9

with the Board that Claimant failed to establish legal circumstances justifying a late appeal. The Board properly dismissed Claimant's appeal as untimely.

Accordingly, we affirm the order of the Board.

_____
P. KEVIN BROBSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Guy Micciche,                                   :
                          Petitioner            :
                                                :
          v.                                    :          No. 304 C.D. 2018
                                                :
Unemployment Compensation                       :
Board of Review,                                :
                          Respondent            :

# **O R D E R**

AND NOW, this 28th day of March, 2019, the order of the Unemployment Compensation Board of Review is AFFIRMED.

 

 

 

_____
P. KEVIN BROBSON, Judge